Filed 8/10/20

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| BLUE FOUNTAIN POOLS AND SPAS INC. et al., | |
|     Petitioners, | E074121 |
| v. | (Super.Ct.No. CIVDS1715712) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
|     Respondent; | |
| DAISY ARIAS, | |
|     Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Donald Alvarez, Judge. Petition denied.

Law Offices of Robert E. Williams and Robert E. Williams for Petitioners.

Hannemann Law Firm, Brian G. Hannemann; Broslavsky & Weinman, Zack Broslavsky and Jonathan A. Weinman for Plaintiff and Real Party in Interest.

No appearance for Respondent.

1

Daisy Arias suffered sustained, egregious sexual harassment for most of the time she was employed by defendant and petitioner, Blue Fountain Pools & Spas Inc.[1] The primary culprit was defendant and petitioner, Sean Lagrave, a salesman who worked in the same office as Arias. Arias says Lagrave did everything from repeatedly asking her for dates to grabbing her buttocks to praising his own sexual prowess to describing his sexual conquests to confronting her with smartphone photographs of himself engaging in sex acts with other women. This list is not complete.

Arias complained about Lagrave's conduct repeatedly over the course of her employment, but things came to a head on April 21, 2017. On that day, Lagrave yelled at Arias in front of coworkers, used gender slurs, and then physically assaulted her, bumping her chest with his own. Arias called the police and later left work.

Arias told the owner, defendant and petitioner, Farhad Farhadian, she wasn't comfortable returning to work with Lagrave. Farhadian did nothing initially, refused to remove Lagrave, then terminated Arias's health insurance, and finally told Arias to pick up her final paycheck. Though Farhadian claimed Arias had quit, she says she was fired.

The termination wasn't Farhadian's only alleged misconduct. Arias also says he ignored several complaints and participated himself in creating a sexualized environment in the office. Arias says Farhadian's own misconduct started at an office Christmas party in December 2015, where he openly ogled Lagrave's girlfriend, commented on her breast

---

[1] Ownership of the company changed in January 2015. Before that, the company was known as Blue Fountain Pools, Inc. We will refer to the company as Blue Fountain throughout and note the change of ownership where relevant.

implants, and then planned to continue the celebration with Lagrave and the girlfriend at a local strip club. Arias says Lagrave later made a habit of discussing Farhadian's conduct in repeated trips to the strip club. She says Lagrave also made it known to coworkers, including Arias, that Farhadian was engaging in sexual relations with dancers from the club.

Arias filed a complaint with the Department of Fair Employment and Housing and received a right to sue letter on August 14, 2017. She then filed this lawsuit alleging, relevant to this appeal, hostile work environment sex discrimination and failure to prevent sexual harassment. Petitioners filed a motion for summary adjudication in the trial court seeking, among other things, to have the hostile work environment claim dismissed as time-barred and the failure to prevent harassment claim dismissed as having an insufficient basis after limiting the allegations to the conduct that wasn't time-barred. The trial court concluded Arias had created a genuine issue of material fact as to all her causes of action and denied the motion.

Petitioners brought a petition for writ of mandate, renewing their statute of limitations argument. They point out Arias began working at the company around October 2006, Lagrave engaged in workplace sexual misconduct almost from the time she started, and Arias consistently complained about his conduct to her supervisors, who didn't correct the situation. Petitioners argue that means the one-year statute of limitations has run on her hostile work environment claim unless she can establish a continuing violation under the test set out in *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798 (*Richards*). They say she can't establish a continuing violation because she's

3

admitted she had concluded further complaints were futile. That means she can't establish, as required by *Richards*, that the discrimination hadn't reached a degree of permanence, triggering her obligation to bring her claim within one year.

There are three problems with their argument. First, Arias has presented evidence several incidents of sexual harassment occurred in the one-year period preceding her termination, that is, *during* the limitations period. That means it would have been improper for the trial court to dismiss her cause of action, even if the court concluded the incidents outside the limitations period can't be the basis for liability and excluding evidence about them is warranted because it would be more prejudicial than probative. Second, as petitioners themselves emphasize, Farhadian purchased the business and took over operations in January 2015. Thus, even if the conduct of prior management made further complaining futile, the arrival of new management created a new opportunity to seek help. We conclude Arias has shown she can establish a continuing violation with respect to all the complained of conduct that occurred during Farhadian's ownership of the company. Third, there is a factual dispute over whether and when Arias's employer made clear no action would be taken and whether a reasonable employee would have concluded complaining more was futile. On this record, where Arias continued complaining about obviously harassing conduct and tried complaining to different people, we conclude that question must be resolved by a jury.

We will therefore deny the petition so Arias's claims may proceed to trial.

# I

# FACTS

A. *The Parties and the Transfer of Ownership*

Defendant and petitioner Blue Fountain Pools and Spas Inc. is a pool and spa construction business. Defendant and petitioner Farhad Farhadian owns and operates Blue Fountain and was one of Arias's supervisors starting when he bought the company in January 2015.

Plaintiff and real party in interest Daisy Arias worked for Blue Fountain long before Farhadian bought the company. She started working for Blue Fountain as a customer service representative around October 2006 and by the time of her discharge, around May 2017, she was their office manager. Defendant and petitioner Sean Lagrave was a salesman at Blue Fountain and supervised Arias.

B. *The Harassment and Arias's Complaints*

Shortly after Arias started at Blue Fountain, Lagrave began to make sexual overtures to her. He started by asking her out on a date. Arias refused, but she overheard Lagrave telling another employee, "Oh, I'll get her. I'll go out with her." The parties agree "[b]eginning in or about November 2006, [Arias] was sexually harassed by defendant Lagrave," and "[w]ithin one week of Lagrave's initial harassment, [Arias] complained to [her direct supervisor] Don Hubbell about Lagrave harassing her by asking her out on a date."

Lagrave continued his advances, and Arias continued to turn him down. Around December 2006, Lagrave escalated. He came up to Arias, used his whole hand to grab her butt, and made a sexual noise. Arias complained again to Hubbell, who said he would talk with Lagrave. If anything, Lagrave's conduct got worse. He began to hit on Arias and make sexual passes at her on a regular basis. He would also compare himself to other men, telling Arias "I'm better" and repeatedly bragged about his own sexual prowess, saying things like "girls always call me," "I'm a sex toy," and "I should start charging for sex." She complained about these comments frequently to Hubbell. Lagrave also frequently touched her waist and hair in passing, and Arias complained about that conduct too.

Lagrave also began to confront Arias with unwanted stories and photographs of his own sex life, a practice which continued over the course of years. He regularly talked about going to a nearby strip club, discussed his sexual exploits, and eventually started showing Arias and other employees photographs on his cell phone of nude women and women engaging in sex acts with him. According to Arias, he would show photographs of himself having anal sex with a woman and talk about "fucking in the ass." He would show photographs of himself receiving oral sex and talk about receiving "blowjobs." He would discuss engaging in threesomes and show her pictures of three people engaged in sex. He would show photographs of nude women with semen on their faces or breasts.

Hubbell was Arias's direct supervisor from November 2006 to sometime in 2012, and she regularly complained to him about Lagrave's conduct. She said Hubbell at times promised to talk to Lagrave, but the harassment continued. She says on at least one occasion, Blue Fountain suspended Lagrave in connection with his conduct toward her. At some point, Arias also began complaining about Lagrave to the first owner of the business, Arnold Zauss. Nevertheless, Lagrave persisted.

Petitioners claim Arias admitted at her deposition that the failure of her manager and the first owner to take effective corrective action against Lagrave led her to think her complaints were futile. When asked whether around 2009 she "fe[lt] like making the complaints to Mr. Hubbell was not going to do any good," she responded yes. She agreed to the same question when posed in relation to an incident when Lagrave showed her a picture of a woman with semen on her bare breasts, which occurred sometime between 2011 and 2013. She said she couldn't remember if she complained about that specific photograph, but she said she continued to complain and began complaining directly to the owner sometime after Hubbell left the company. Arias also contests petitioners' characterization of her testimony. In responding to their statement of undisputed facts, she said her complaints about Lagrave's conduct *did* result in at least one temporary suspension. She also says she continued to complain to Hubbell and Zauss in the hope that they would initiate appropriate corrective action.

In January 2015, Farhadian purchased Blue Fountain from Zauss. Arias said the sale gave her hope for a change and she continued complaining about Lagrave's conduct under the new regime. She says when she first met Farhadian, she reported her problems with Lagrave and asked Farhadian to observe him closely. She said she also opposed Lagrave's harassing conduct in other ways, telling him to stop, ignoring him as much as possible, and by reporting his conduct to Sheila Anderson as well as Farhadian. Farhadian himself said Blue Fountain has a "zero tolerance" harassment and discrimination policy. He also said their policy is any such conduct should be reported directly to him and he would investigate the complaint personally.

Nevertheless, the situation appeared to deteriorate rather than improve. According to Arias, Farhadian began to participate in the hostile work environment and sexual harassment. During a Christmas party in December 2015, Arias heard Farhadian and Lagrave engaged in a detailed discussion about Lagrave's girlfriend's breast implants. Later that night, Farhadian and Lagrave talked about the girlfriend's breasts again in front of Arias, and Farhadian commented on how her breasts looked nice in her blouse while staring at the girlfriend's chest. Another day, Arias walked into Farhadian's office to talk to him about work but found the two again discussing the girlfriend's breast implants. Lagrave turned to Arias and asked what she thought about breast augmentation.

Farhadian and Legrave also bonded over their mutual enjoyment of strip clubs and especially the local strip club Lagrave previously had bragged of frequenting. Arias says the pair went to the strip club after the company Christmas celebration and went there

together frequently. Lagrave began telling Arias details about their trips. Lagrave also told Arias that Farhadian had begun taking dancers from the club to a hotel near the Blue Fountain office. Arias asked Lagrave to stop talking about sex and stop talking about Farhadian's sexual encounters.

Lagrave seemed emboldened by Farhadian's conduct. As his sexually harassing comments increased, Arias continued to object to Lagrave and others. Lagrave would simply laugh at Arias and walk away. In January 2016, Lagrave made hip thrusting gestures simulating sex near Arias. When she objected and told him she was going complain to Farhadian, Lagrave said "fuck Frank" and made the gesture again.

Lagrave continued to show Arias sexual photographs during this period. In the year after Farhadian bought Blue Fountain, Lagrave showed Arias sexually explicit photographs of his girlfriend around five to eight times. Sometime during 2015, Lagrave also talked about his girlfriend's breast implants and the fact she was "addicted to implants," "wanted to go bigger," and even wanted an "ass implant," among other things. He also told Arias the girlfriend paid for lap dances at the strip club and had sexual encounters with the dancers as well.

According to Arias, conduct of this sort went on throughout 2016 and until she left the company in April 2017. Though petitioners claimed it was undisputed "Lagrave's flirting with, hitting on and making passes at plaintiff continued until sometime in 2015 (2 years prior to the end of her employment with Blue Fountain Pools)," Arias denied this as a mischaracterization of her allegations and the evidence. She said Lagrave continued

9

making inappropriate sexual comments towards her, describing sexual activities with his girlfriend, and talking about sex toys in front of her. She says his sexual thrusting gestures and other sexually suggestive movements continued throughout the period from 2015 through the last months of her employment. She also says he took opportunities to touch her on the hair, waist, and shoulders without permission during the same period.

Finally, on April 21, 2017, Lagrave physically assaulted Arias at work. When she objected to additional inappropriate comments,[2] Lagrave unleashed a verbal tirade in front of their coworkers. He called Arias a "dumb bitch" and yelled "fuck you bitch." When Arias objected further, Lagrave got in her face and used his chest to bump her chest. Arias called the police, who came to the scene. The police interviewed witnesses, one of whom corroborated Arias's account of the assault. Arias left work and didn't return.

C. *The Termination*

The next day, Farhadian reached out to Arias. He said by text message that Lagrave had told him what happened, and he wanted to hear Arias's side of the story. Arias said by text message that she was extremely shaken by the assault and wasn't doing well. "I will be in Monday at [7:00 a.m.] we can talk then. I'm extremely [shocked] by what Sean put [me] through. Never in my life have [I] been so disrespected and

---

[2] Petitioners claimed in the trial court that the assault arose from a dispute over a customer complaint and not over sexual harassment. Arias contested that characterization, pointing out that she complained to Lagrave for belittling her and degrading her by calling her an "idiot" and a "bitch" after a customer complaint. Lagrave's conduct clearly could play a role in establishing a hostile work environment for women.

humiliated by someone, [never mind have] a male get in [my] face and with so much aggression I feared he was going to hurt me. I am not doing good at all."

On Monday, Arias told Farhadian she wasn't feeling well and wasn't able to come to work that day. She told him she had gone to the hospital because of anxiety and pain. He made it clear he was upset she wasn't coming in. Arias nevertheless took more time off work to recover but kept Farhadian notified of her status and set up a time to speak with him. The same day, Farhadian cancelled Arias's employer-provided health insurance plan.

The two met a week later, on May 1, and Arias told Farhadian she wasn't comfortable returning to work with Lagrave in the office acting as one of her supervisors. Farhadian agreed with Arias that Lagrave's behavior toward her was inappropriate, but said he "needed" Sean, and he "could not let him [Lagrave] go." He told her he wanted her to come back to work but said she could take her time. When he offered to change her schedule so she wouldn't have to see Lagrave, she said she didn't think that would work and said she wanted Lagrave to be terminated.

Between May 1, 2017 and May 5, 2017, Arias worked for Blue Fountain from home while waiting for Farhadian to decide whether to discipline or terminate Lagrave. Farhadian never told Arias what he planned to do. On May 5, Arias sent Farhadian a text message asking about her employment and whether he planned to terminate her or Lagrave. She said, "It's not fair that I'm the one out of the work place because of other [people's] actions and behavior." Farhadian responded by saying Arias had quit her job

11

by not returning to work and he had "no choice but to hir[e] another person because my business is suffering." Arias objected she hadn't quit, but Farhadian had failed to provide a safe work environment and had failed to address Lagrave's inappropriate conduct. Farhadian responded, "I'm not saying what Sean did was ok. What I'm saying is that I can't be sitting in the office babysitting my employees making sure they don't argue with each other."

On May 8, 2017, Farhadian directed Arias to pick up her last paycheck.

D. *Arias's Complaint*

Arias filed charges of sexual harassment, failure to prevent discrimination and harassment, discrimination, retaliation, assault and battery, and constructive wrongful termination against Lagrave, Farhadian, and Blue Fountain with the California Department of Fair Employment and Housing. She received notice dated August 14, 2017 of her right to sue in a California Superior Court under Government Code section 12965, subdivision (b).

The next day, Arias filed the complaint in the Superior Court of San Bernardino County, alleging the same causes of action.

E. *The Motion for Summary Adjudication and the Trial Court's Ruling*

Blue Fountain, Farhadian, and Lagrave brought a motion for summary adjudication. Among other things, they asked the trial court to dismiss her hostile work environment claim as coming too late. They argued Arias's "cause of action for sexual harassment accrued prior to the one-year limitations period of Govt. Code § 12940 (d).

12

Her claim for such harassment is therefore time-barred unless she can establish a continuing violation. [Citation.] However, plaintiff cannot establish a continuing violation because the violation achieved a state of permanence prior to the commencement of the one-year limitations period. [Citation.] Plaintiff's own testimony establishes that because plaintiff's complaints of harassment had proven futile, the alleged harassment achieved a state of permanence no later than 2013." As for Arias's claim for failure to prevent harassment, Blue Fountain and Farhadian argued that claim should be dismissed as well, because the only incidents of alleged harassment that occurred within the statutory period were insufficient to sustain a claim for sexual harassment.

On October 25, 2019, the trial court ruled on the motion by minute order because the parties were going to a settlement conference and requested an immediate ruling. The court denied the motion for summary adjudication as to both causes of action. It held there are issues of material fact whether Arias's sexual harassment cause of action is time-barred.

Petitioners brought a timely petition for writ of mandate, asking us to direct the trial court to dismiss Arias's hostile work environment sexual harassment cause of action and her failure to prevent sexual harassment cause of action. We ordered Arias to file a return showing why we shouldn't grant petitioners' request.

## II

## ANALYSIS

Petitioners argue Arias's claim for hostile work environment sexual harassment under Government Code section 12940, subdivision (j) is barred by the one-year statute of limitations set out in Government Code section 12960, subdivision (d).

They acknowledge Arias may rely on the continuing violation doctrine to avoid the statute of limitations but argue her claims, to the extent they're based on events more than one year before she filed her complaint with the Department of Fair Employment and Housing, don't fall under the doctrine because a reasonable employee would have long ago understood from Blue Fountain's actions that any further efforts to resolve her complaints and end the harassment were futile.

They attempt to extend this bar to gain dismissal of her hostile work environment cause of action in its entirety, even to the extent it's based only on acts that occurred within the one-year statutory period. They argue when a cause of action for harassment accrues prior to the one-year limitations period and the plaintiff is unable to establish a continuing violation, the whole claim is barred, even if the harassment continues.[3]

Petitioners' argument turns the continuing violation doctrine on its head and transforms the statute of limitations from a shield into a sword. Under Government Code

---

[3] We review the trial court's ruling denying summary adjudication de novo, construing all facts in favor of Arias. (*Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 999 (*Birschtein*).) Resolution of the statute of limitations is normally a question of fact, and summary judgment is proper only where the undisputed facts allow only one legitimate inference. (*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1054-1055.)

section 12960, subdivision (d), "[a] plaintiff suing for violations of FEHA ordinarily cannot recover for acts occurring more than one year before the filing of the DFEH complaint." (*Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1400.) Under the continuing violations doctrine, however, "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." (*Yankowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1056.) If there was no continuing violation, the statute of limitations would stop Arias from establishing liability for acts that occurred more than a year before she filed her complaint with the Department of Fair Employment and Housing. But finding there wasn't a continuing violation because the *earlier abuse* and failure to respond had become "permanent" doesn't stop her from establishing liability for later abusive acts that occurred within the limitations period.

As our Supreme Court explained when it adopted the current test for a continuing violation, the doctrine "allows liability for unlawful employer conduct occurring *outside the statute of limitations* if it is sufficiently connected to unlawful conduct *within the limitations period*." (*Richards*, *supra*, 26 Cal.4th at p. 802, italics added.) Put another way, the continuing violation doctrine provides a way for *employees* to escape the effects of the statute of limitations and reach *back* in time to base liability on earlier acts. It doesn't provide *employers* a way to expand the scope of the statute of limitations to reach *forward* to bar claims based on acts within the statutory period.

15

The way the Supreme Court set up the issue in *Richards* makes this perfectly clear. "The Court of Appeal correctly concluded that some of [the employer's] misconduct was within the relevant limitations period for FEHA actions—e.g., the persistent blocking of hallway access and access to the supply room, the failure to prepare a fire escape plan, the failure to adjust the timing of the elevator door to provide access to the lunchroom. Other misconduct occurred outside the limitations period. Richards argues that these actions were nonetheless properly presented to the jury, both for evidentiary purposes and for purposes of proving damages, because they were brought in by the continuing violation doctrine. The Court of Appeal held, and [the employer] argues, that *only those incidents of failure to reasonably accommodate that occurred within the limitations period were properly placed before the jury*. To decide which party is correct, we must determine the proper scope of the continuing violation doctrine." (*Richards*, *supra*, 26 Cal.4th at p. 812, italics added.)

The *Birschtein* decision, on which petitioners rely, is instructive as well. In *Birschtein*, the Court of Appeal explicitly extended the continuing violation doctrine announced in *Richards* to a claim of hostile work environment sexual harassment. The question the *Birschtein* court faced was whether plaintiff could avail herself of the doctrine where she was first subjected to a series of overtly sexual remarks *before the statute of limitations period*, complained about her coworker's conduct, and her coworker then stopped the comments but began a campaign of hostile staring *within the statutory period*. The Court of Appeal held the incidents of staring could support a harassment

16

claim on their own, but also held the harasser's conduct before and after the statutory period were sufficiently continuous to satisfy the *Richards* test and allow the victim to recover based on the earlier incidents *in addition to the later incidents*. (*Birschtein*, *supra*, 92 Cal.App.4th at pp. 1001-1002, 1006.)

That means we can put to rest the idea that the trial court in this case should have dismissed Arias's hostile work environment cause of action in its entirety based on the statute of limitations. There is evidence of conduct within the statutory period, ending with the incident of April 21, 2017, when Lagrave used gender slurs against Arias and physically assaulted her. Though petitioners argue the other incidents of misconduct all occurred more than a year earlier, their position isn't supported by the agreed undisputed facts or other evidence Arias submitted. Arias intends to prove at trial that Lagrave continued making inappropriate sexual comments towards her, describing sexual activities with his girlfriend, and talking about sex toys in front of her. She says his sexual thrusting gestures and other sexually suggestive movements continued throughout the period from 2015 through the last months of her employment. She also says he took opportunities to touch her on the hair, waist, and shoulders without permission during the same period. Therefore, at a minimum, Arias is entitled to pursue her hostile work environment claim and failure to prevent discrimination claim based on such conduct. We would dismiss the writ petition on that basis alone.

But we also hold Arias may seek recovery based on any unlawful discriminatory conduct that occurred during the entire period when Farhadian owned and operated Blue Fountain. That conduct forms part of a continuing violation within the meaning of *Richards*. "[A]n employer's persistent failure . . . to eliminate a hostile work environment . . . is a continuing violation if the employer's unlawful actions are (1) sufficiently similar in kind . . .; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." (*Richards*, *supra*, 26 Cal.4th at p. 823.) Petitioners don't argue the incidents Arias complains of weren't sufficiently similar or didn't occur frequently enough. They argue the pattern of harassment by Lagrave and Blue Mountain's refusal to take corrective action were so established by 2013 (at the latest) that its failure to end the harassment had acquired a degree of permanence, meaning the cause of action had accrued by that time.

With regard to the incidents Arias complains about from 2015 on, we reject that argument as a matter of law. "[W]hen an employer engages in a continuing course of unlawful conduct under the FEHA . . . and this course of conduct does not constitute a constructive discharge, the statute of limitations begins to run, not necessarily when the employee first believes that his or her rights may have been violated, but rather, *either* when the course of conduct is brought to an end, as by the employer's cessation of such conduct or by the employee's resignation, *or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain. Accordingly, an employer who is confronted with an employee seeking . . . relief from . . . harassment may assert control

over its legal relationship with the employee either by accommodating the employee's requests, or by making clear to the employee in a definitive manner that it will not be granting any such requests, thereby commencing the running of the statute of limitations." (*Richards*, *supra*, 26 Cal.4th at pp. 823-824.)

In this case, Farhadian and Blue Fountain took no action to assert control over the legal relationship. Farhadian acquired the company and took over operations in early 2015. Even if it were futile for Arias to complain further about her working conditions under prior management, it wasn't futile for her to complain once Farhadian took over. As Arias points out, Farhadian purports to have a "zero tolerance" policy for workplace sexual discrimination and he said the company policy was that he would look into any claims of harassment himself. It was reasonable for Arias to think—and even expect—that renewing her complaints about Lagrave's ongoing discrimination would result in corrective action once Farhadian took over operations.

According to Arias, Lagrave committed various acts of straightforward sex discrimination from January 2015 to April 2017, and Farhadian appears to have added to the mix. At a Christmas party in December 2015, the two engaged in a long discussion about Lagrave's girlfriend's breast implants that night and again later in the office, both times in front of Arias. They also bonded over strip clubs and went to a strip club the night of the Christmas party and frequently thereafter. Lagrave started telling Arias about their trips and also told her Farhadian had begun taking dancers from the club to a hotel near their office.

Arias complained to Lagrave about these conversations, but he seemed emboldened. When Arias objected, Lagrave would laugh at Arias and walk away. When, in January 2016, she objected to Lagrave making hip thrusting gestures near her and threatened to complain to Farhadian, Lagrave said "fuck Frank" and made the gesture again. He continued to show Arias sexual photographs, including sexually explicit photographs of his girlfriend on several occasions. Sometime during 2015, Lagrave also talked about his girlfriend's breast implants and the fact that she was "addicted to implants," "wanted to go bigger," and even wanted an "ass implant." He also told Arias the girlfriend paid for lap dances at the strip club and had sexual encounters with the dancers as well.

Arias says she complained about the discrimination, but there's no evidence Farhadian or anyone else at Blue Fountain ever attempted to assert control by accommodating her complaints—they certainly didn't stop the harassment. Nor did they make clear to her in a definitive manner that they weren't going to attempt to solve the problem. Instead, they allowed the situation to simmer until it boiled over into physical violence when the two got into a dispute over a customer complaint, and Lagrave called Arias a "dumb bitch," yelled "fuck you bitch," and then assaulted her by using his chest to bump her chest. Arias left work and didn't return. Farhadian refused to terminate Lagrave, terminated Arias's health insurance, and then terminated her (whether actually or constructively is disputed).

We conclude the trial court was correct to refuse to dismiss Arias's cause of action for hostile work environment sex discrimination based on conduct that occurred from 2015 onwards. If credited by the jury, the evidence she presented is sufficient to establish such conduct was part of a continuing violation. (*Birschtein*, *supra*, 92 Cal.App.4th at p. 1006 [our "conclusion, of course, means only that plaintiff presented sufficient evidence to survive defendant's motion for summary judgment; whether a properly instructed jury would conclude plaintiff's evidence was sufficient as a matter of fact to establish a continuing violation and support an award of damages outside the limitations period remains an open question"].)

We also conclude the trial court was correct to refuse to bar evidence of Lagrave's misconduct from 2006 to 2014, before Farhadian took over at Blue Fountain. The question is really one of notice to the employee. The *Richards* court interpreted Government Code section 12960 to mean when a continuing pattern of wrongful conduct occurs partly in the statutory period and partly outside the statutory period, the limitations period begins to accrue, and past acts may slip out of the statutory period, once an employee is on notice of the violation of his or her rights and on notice that "litigation, not informal conciliation, is the only alternative for the vindication of his or her rights." (*Richards*, *supra*, 26 Cal.4th at p. 823.)

The cases finding prior courses of discriminatory conduct had reached permanence involved plaintiffs who had pursued formal grievance procedures and been denied relief. In *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, the Court of Appeal held

21

an employer's alleged sexual discrimination had reached a state of permanence after the plaintiff's supervisor repeatedly refused to respond to her requests to be permitted to work in a particular job and she filed internal grievances challenging these decisions, which were unsuccessful. (*Id.* at pp. 1035-1037, 1042-1043.) When Cucuzza filed a formal grievance complaining about the loss of job duties, the city employer's only response was to give her the opportunity to transfer out of the department, a move she accepted. (*Id.* at p. 1043.) The *Cucuzza* court held the plaintiff "should have known that further efforts to resolve the situation would be futile" because there was "little that would be a more definitive denial of plaintiff's request to perform certain job duties than an offer to transfer her out of the job altogether." (*Id.* at pp. 1042-1043.) Similarly, the Court of Appeal found discrimination had become permanent in *Jumaane v. City of Los Angeles*, *supra*, 241 Cal.App.4th at p. 1403 only where the plaintiff "protested racism in the Department in a 1991 letter to the City Council, in a 1994 interview with the city personnel department, in a 1994 City Council hearing, and in a 1997 deposition," and had filed several union grievances alleging racism.

Blue Fountain took no such definitive action. Instead, according to Arias's testimony, her supervisor seemed to take her complaints seriously. Arias spent a lot of time complaining about Lagrave to Don Hubbell and she said he was bothered by Lagrave's conduct and told Arias he would speak to Lagrave on numerous occasions and suspended Lagrave on at least one of them. It's clear these efforts were ineffectual, but there's no evidence Hubbell understood he was dealing with actionable sexual

harassment or communicated that Arias's only recourse would be suing her employer. (See *Richards*, *supra*, 26 Cal.4th at pp. 823-824 ["an employer who is confronted with an employee seeking . . . relief . . . may assert control over its legal relationship with the employee either by accommodating the employee's requests, or *by making clear to the employee in a definitive manner that it will not be granting any such requests*"] italics added.) Instead, it appears neither the employee nor the employer engaged with the problem in a sufficiently formal and professional manner, with the result that Lagrave skated through and Arias continued to suffer from and complain of harassment.

Here, there's a factual dispute over whether a reasonable employee would have concluded Blue Fountain had acted definitively to refuse to address the misconduct putting Arias on notice. The unlawful conduct certainly went on for a ridiculous amount of time, and Arias did agree she had the thought that complaining about a new act of unlawful conduct would "do no good." But her statement doesn't have the definitive meaning petitioners try to impute to it. She appears to have meant not that she no longer believed her earlier supervisors were willing to intervene, but that Lagrave was such an inveterate abuser he would continue his misconduct anyway. An employee "entertain[ing] notions that the harassment would not stop . . . cannot be said, as a matter of law, [to establish] that the racial harassment prior to the limitations cutoff reached a degree of permanence such that it would have been clear to a reasonable employee in Plaintiff's position that further efforts to end the harassment would be futile." (*Harris v. City of Fresno* (E.D. Cal. 2009) 625 F.Supp.2d 983, 1025 [denying summary judgment

and allowing continuing violation theory to proceed to trial].) In addition, it's undisputed Arias continued to complain and complained to the owner of the company after repeated complaints to her direct supervisor didn't produce results. We conclude, under these circumstances, it's for the jury to decide whether Arias was reasonable to await a more definitive act like Farhadian's refusal to discipline Lagrave for the assault and his decision to terminate her instead. (*Richards*, *supra*, 26 Cal.4th at p. 812.)

## III

## DISPOSITION

We deny the petition. Arias is entitled to her costs.

CERTIFIED FOR PUBLICATION

SLOUGH _____

J.

We concur:

MILLER _____

Acting P. J.

FIELDS _____

J.